**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**MELANIE G.**

                              **Plaintiff,**

v.                                                 **5:20-CV-01630 (NAM)**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

                              **Defendant.**

---

**APPEARANCES:**

Justin Goldstein
Kenneth Hiller
Law Offices of Kenneth Hiller
6000 North Bailey Avenue, Suite 1A
Amherst, NY 14226
*Attorney for Plaintiff*

Hugh Dun Rappaport
Social Security Administration
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203
*Attorney for Defendant*

**Hon. Norman A. Mordue, Senior United States District Court Judge:**

                           **MEMORANDUM-DECISION AND ORDER**

**I.   INTRODUCTION**

      Plaintiff Melanie G. filed this action on December 31, 2020 under 42 U.S.C. § 405(g), challenging the denial of her application for Supplemental Security Income ("SSI") benefits under the Social Security Act.  (Dkt. No. 1).  After carefully reviewing the Administrative

1

Record, ("R," Dkt. No. 12), the Court reverses the decision of the Commissioner and remands for further proceedings.

**II.     BACKGROUND**

On April 4, 2019, Plaintiff filed an application for SSI benefits, alleging that she became disabled on January 29, 2018 due to the following conditions: 1) agoraphobia with panic disorder; 2) anxiety disorder; 3) posttraumatic stress disorder ("PTSD"); 4) major depressive disorder ("MDD"); 5) asthma disorder; 6) migraine disorder; and 7) obesity. (R. 64–65, 193, 226, 244–51).

Plaintiff's claim was initially denied on June 10, 2019, and again on reconsideration on October 28, 2019. (R. 117, 125). Plaintiff requested a hearing, and on April 1, 2020, she appeared and testified at a telephone hearing before Administrative Law Judge ("ALJ") Kenneth Theurer. (R. 33–63, 137). On April 4, 2020, ALJ Theurer issued a written decision denying Plaintiff's claim. (R. 16–32). The Appeals Council denied review, (R. 1–6), and Plaintiff then commenced this action, (Dkt. No. 1).

### A.  Plaintiff's Background and Testimony

Plaintiff was born in 1983 and was 32 years old as of the alleged onset date of disability. (R. 213). She has a ninth-grade education with special education services. (R. 226). She previously worked as a cashier and daycare provider. (R. 203–12, 217–24, 227, 233–41).

At the hearing, Plaintiff testified that she cannot work due to anxiety, panic attacks, depression, and agoraphobia. (R. 48, 53). Plaintiff testified that she also has PTSD. (R. 48). Plaintiff said that she takes medication and receives counseling, but still has good days and bad days. (R. 50). Plaintiff testified that she spends most of her time at home taking care of her two-year old child. (R. 50). She does not drive, but she is able to cook and clean. (R. 51).

### B. Medical Evidence

1. **Treatment Records**

On October 7, 2013, Plaintiff was admitted to treatment at Liberty Resources Brownell Center for Behavioral Health ("Liberty"). (R. 282). As of November 4, 2013, she had symptoms of MDD, including lethargy, lack of interest, isolation from others, and tearfulness. (R. 282). She also had panic attacks and social anxiety, and PTSD symptoms including flashbacks, nightmares, and triggering. (R. 282). She had symptoms of anxiety including heart racing, nervousness, and excessive worry. (R. 282). Her symptoms were causing interference in activities of daily living. (R. 282). As of November 3, 2015, she was diagnosed with agoraphobia with panic disorder, PTSD, and MDD. (R. 283).

On June 11, 2018, Plaintiff was seen at Liberty and received a treatment plan, which was updated with progress notes several times in 2018 and 2019. (R. 290–98, 714–54, 776–99). On January 16, 2019, Plaintiff saw Nurse Practitioner ("NP") Heather Henderson. (R. 709–13). Plaintiff reported her mood as fair, with increased anxiety and depression. (R. 709). NP Henderson examined Plaintiff and noted among other things: "thought process coherent, linear, and goal-directed"; no evidence of psychosis; fair affect range; fair recent and remote memory; fair concentration; fair attention; fair abstraction; fair insight; fair judgment; and fair impulsivity. (R. 710). NP Henderson assessed Plaintiff with chronic depression and moderate to severe panic/anxiety. (R. 711). She prescribed medication to treat anxiety and depression and advised Plaintiff to continue psychotherapy. (R. 712).

On March 1, 2019, NP Henderson treated Plaintiff for panic disorder with agoraphobia and MDD. (R. 702–06). Plaintiff reported her mood as fair, and that her conditions were responding to medication. (R. 703–04). On examination, NP Henderson noted: "thought

process coherent, linear, and goal-directed"; no evidence of psychosis; fair affect; fair recent and remote memory; fair attention; fair abstraction; fair insight; fair judgment; and fair impulsivity. (R. 703). NP Henderson again assessed Plaintiff with chronic depression and moderate to severe panic/anxiety. (R. 703). Plaintiff was continued on medication and psychotherapy. (R. 703).

On April 26, 2019, NP Henderson treated Plaintiff for panic disorder with agoraphobia and MDD. (R. 695–99). Plaintiff reported her mood as fair, and that her conditions were responding to medication. (R. 696–97). On examination, NP Henderson noted: "thought process coherent, linear, and goal-directed"; no evidence of psychosis; fair mood; fair affect; fair recent and remote memory; fair attention; fair abstraction; fair insight; fair judgment; and fair impulsivity. (R. 696). NP Henderson again assessed Plaintiff with chronic depression and moderate to severe panic/anxiety and continued her on medication and psychotherapy. (R. 696).

On June 14, 2019, NP Henderson treated Plaintiff for panic disorder with agoraphobia and MDD. (R. 300–04). Plaintiff reported that her mood was generally good, and that her anxiety level had been manageable recently. (R. 301–02). On examination, NP Henderson noted: "thought process coherent, linear, and goal-directed"; no evidence of psychosis; fair affect; fair recent and remote memory; fair attention; fair abstraction; fair insight; fair judgment; and fair impulsivity. (R. 301). NP Henderson assessed chronic depression and chronic panic/anxiety. (R. 302).

On August 29, 2019, Plaintiff returned to Liberty to update her treatment plan. (R. 282–89, 800–08). Plaintiff reported struggling to manage her symptoms of depression, such as isolating, low energy/fatigue, difficulties sleeping, tearfulness, depressed mood, and low self-esteem due to her diagnosis of PTSD. (R. 284). She also had panic disorder symptoms and

4

struggled with anxiety and hypervigilance as it related to PTSD. (R. 285). She was treating with therapists Rebecca Preston and Agnieszka Hope Williams every other week. (R. 284–88).

The following day, August 30, 2019, NP Henderson treated Plaintiff for panic disorder and MDD. (R. 310–11, 313–18). Plaintiff reported that her mood was generally good, and that her symptoms were responding to medication. (R. 313). On examination of Plaintiff, NP Henderson noted: "thought process coherent, linear, and goal-directed"; no evidence of psychosis; fair affect; fair recent and remote memory; fair attention; fair abstraction; fair insight; fair judgment; and fair impulsivity. (R. 314). Plaintiff was continued on medication and psychotherapy. (R. 313).

On October 25, 2019, Plaintiff saw NP Henderson again and reported that her anxiety level was high. (R. 828–33). NP Henderson's examination findings remained largely the same. (R. 831). Plaintiff was continued on medication and psychotherapy. (R. 830). On December 20, 2019, Plaintiff saw NP Henderson and reported that her mood was generally good and her anxiety was responding well to medication. (R. 834–39). NP Henderson's examination findings remained largely the same. (R. 836). NP Henderson assessed chronic depression and chronic panic/anxiety, and continued Plaintiff on medication and psychotherapy. (R. 836–37).

2. **Opinion Evidence**

On May 28, 2019, State agency consultant Dante Alexander, Psy.D. completed an adult psychiatric evaluation for Plaintiff. (R. 756–60). Plaintiff reported receiving outpatient mental health treatment with Heather Henderson; she was prescribed Pristiq and Buspirone; she avoided social settings; she had panic attacks consisting of palpations and sweating; and she had word-finding deficits, difficulty learning new material, organizational difficulties, and planning difficulties. (R. 756). On examination, Plaintiff's attention and concentration were found mildly

5

impaired due to limited math ability; her memory was intact; her intellectual functioning was estimated at borderline; and her general fund of information was somewhat limited. (R. 757). Dr. Alexander found no evidence of limitations for understanding, remembering, or applying simple or complex directions and instructions. (R. 758). But Dr. Alexander assessed the following limitations:

> Mild limitation using reasoning and judgment to make work-related decisions. Mild to moderate limitation interacting adequately with supervisors, coworkers, and the public. Mild limitations sustaining concentration and performing at a task at a consistent pace. Mild limitation sustaining an ordinary routine or regular attendance at work. Mild to moderate limitation regulating emotion, controlling behavior, and maintaining well-being.

(R. 758). Dr. Alexander noted that Plaintiff's difficulties were caused by distractibility. (R. 758). Dr. Alexander diagnosed Plaintiff with social anxiety disorder with anxiety attacks, with a fair prognosis. (R. 758).

On June 3, 2019, non-examining State agency medical consultant, M. Vasquez-Gonzalez, M.D., assessed that, due to her asthma, Plaintiff should avoid concentrated exposures to fumes, odors, dusts, gases, poor ventilation, etc. (R. 70–72). On June 4, 2019, non-examining State agency psychological consultant, C. Walker, Ph.D. assessed that, due to her anxiety and depression, Plaintiff had: moderate limitations interacting with others; moderate limitations concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 68–69). This opinion was affirmed by S. Hennessey, Ph.D. on October 1, 2019. (R. 773–75).

On March 16, 2020, NP Henderson completed a medical source statement. (R. 945–47). NP Henderson noted that she treated Plaintiff every two months or as needed for medication management, and that Plaintiff saw a therapist bi-weekly. (R. 945). NP Henderson listed Plaintiff's diagnoses as MDD, Panic Disorder, asthma, hypertension, and sleep apnea, with a

guarded prognosis. (R. 945). NP Henderson identified supporting signs and symptoms as: anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with weight change; decreased energy; feelings of guilt or worthlessness; generalized persistent anxiety; mood disturbance; difficulty thinking or concentrating; recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress; easy distractibility; sleep disturbance; emotional withdrawal or isolation; and recurrent severe panic attacks manifested by a sudden, unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once per week. (R. 945–46).

As to mental abilities and aptitudes needed to do unskilled work, NP Henderson found that Plaintiff was unable to meet competitive standards in her abilities to: 1) complete a normal workday or workweek without interruptions from psychologically based symptoms; 2) accept instructions and respond appropriately to criticism from supervisors; 3) respond appropriately to changes in a routine work setting; and 4) deal with normal work stress. (R. 946). She was seriously limited in her abilities to ask simple questions or request assistance. (R. 946). NP Henderson noted that Plaintiff had left jobs in the past due to panic attacks and anxiety; she had reported and demonstrated anxiety and distractibility when interacting with others; and changes and unfamiliar places and people also triggered her anxiety. (R. 946). NP Henderson found that Plaintiff was unable to meet competitive standards as to traveling in unfamiliar place and using public transportation, noting that she experienced panic attacks in unfamiliar situations. (R. 947). Plaintiff also experienced migraines which could be triggered by her anxiety. (R. 947). NP Henderson assessed that Plaintiff would be absent from work on average more than four days per month due her impairments or treatment. (R. 947).

### C. ALJ's Decision Denying Benefits

At step one of the five-step evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since April 4, 2019, her application date. (R. 21). At step two, the ALJ determined that Plaintiff had the following "severe" impairments: 1) asthma; and 2) anxiety and depression. (R. 21) (citing 20 C.F.R. § 416.920(c)).

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, 416.920(d), 416.925 and 416.926)." (R. 22).

At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [T]he claimant should avoid concentrated exposure to smoke, dust, and respiratory irritants. She retains the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; she can relate to and interact with coworkers and supervisors to the extent necessary to carry out simple tasks-i.e. she can ask for help when needed: handle conflicts with others: state her own point of view: initiate or sustain a conversation, and understand and respond to physical, verbal and emotional social cues but she should avoid work requiring more complex interaction or joint efforts with coworkers to achieve work goals. The claimant should have no more than occasional contact with coworkers and supervisors and should have no more than incidental contact with the public. The claimant can handle reasonable levels of simple work-related stress in that she can make simple decisions directly related to the completion of her tasks in a stable, unchanging work environment.

(R. 24).

Next, the ALJ found that Plaintiff had no past relevant work. (R. 27). The ALJ noted that Plaintiff was 35 years old when she applied for SSI benefits, she had a limited education, and she was able to communicate in English. (R. 27). The ALJ then asked a vocational expert

8

whether "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." (R. 27). The vocational expert responded that such jobs included packager, dining room attendant, marker II, and router. (R. 28). Based on this testimony, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 28). Consequently, the ALJ found that Plaintiff was not disabled. (R. 28).

### III. STANDARD OF REVIEW

#### A. Disability Standard

To be considered disabled, a claimant must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the claimant's impairment(s) must be "of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration uses a five-step process to evaluate disability claims:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If she is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider her [*per se*] disabled . . . . Assuming the claimant does not

9

> have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the Commissioner then determines whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F.3d 409, 417–18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see also* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the initial burden of establishing disability at the first four steps; the Commissioner bears the burden at the last. *Selian*, 708 F.3d at 418.

### B. Standard of Review

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether Plaintiff is disabled. Rather, the Court must review the administrative record to determine whether "there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted).

When evaluating the Commissioner's decision, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian*, 708 F.3d at 417 (citation omitted). The Court may set aside the final decision of the Commissioner only if it is not supported by substantial evidence or if it is affected by legal error. 42 U.S.C. § 405(g); *Selian*, 708 F.3d at 417; *Talavera*, 697 F.3d at 151. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447–48 (2d Cir. 2012) (quoting *Moran*, 569 F.3d at 112).

### C. Evaluating Medical Opinions

For claims filed after March 27, 2017, as is the case here, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The ALJ is still required to "articulate how he considered the medical opinions" and "how persuasive he finds all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," and an ALJ is required to "explain how he considered the supportability and consistency factors" for a medical opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the Regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The Regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

## IV.   DISCUSSION

Plaintiff challenges the ALJ's decision to deny her SSI benefits on the grounds that the ALJ erred in his analysis of the medical opinions and failed to identify substantial evidence to support Plaintiff's RFC. (Dkt. No. 17, p. 9). In response, the Commissioner counters that the ALJ properly evaluated the evidence when formulating the RFC. (Dkt. No. 22, p. 3).

11

### A. Medical Opinions

First, Plaintiff objects to the ALJ's analysis of the opinions given by NP Henderson and Drs. Alexander, Walker, and Hennessey. (Dkt. No. 17, pp. 11–20).

### 1. NP Henderson

On March 16, 2020, NP Henderson completed a medical source statement for Plaintiff. (R. 945–47). As relevant here, NP Henderson diagnosed Plaintiff with MDD with Panic Disorder. (R. 945). NP Henderson assessed that due to Plaintiff's mental impairments, she was unable to meet competitive standards for: completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (R. 946). NP Henderson further opined that Plaintiff was seriously limited in her ability to ask simple questions or request assistance. (R. 946). NP Henderson also opined that Plaintiff was limited in her abilities to: maintain regular attendance and work with others without being unduly distracted or exhibiting behavioral extremes. (R. 946). NP Henderson opined that Plaintiff was unable to travel to unfamiliar places or use public transportation due to her reported panic attacks. (R. 947). NP Henderson assessed that Plaintiff would be absent from work on average more than four days per month due to her impairments or treatment. (R. 947).

The ALJ found that NP Henderson's opinion was not persuasive because it was "not consistent with the record as a whole including the [plaintiff's] normal mental health symptom evaluations as reported in the record, and it is not consistent with the other medical opinions in the record." (R. 26). The ALJ also stated that "NP Henderson's assessments are not tied to

clinical findings such as the conclusion that the claimant will miss more than four days per month." (R. 26).

Plaintiff contends that the ALJ mischaracterized her mental health evaluations as normal and failed to discuss numerous abnormal findings. (Dkt. No. 17, pp. 12–13). The Court agrees. While the ALJ noted a few normal findings, the record shows that Plaintiff consistently reported symptoms of anxiety and depression, and her primary mental health medical provider, NP Henderson, consistently documented *below normal* clinical findings. For example, on January 16, 2019, Plaintiff saw NP Henderson and reported increased anxiety and depression. (R. 709). On examination, NP Henderson noted that Plaintiff had a coherent thought process and no evidence of psychosis, but NP Henderson also found that Plaintiff had only *fair* affect range, recent and remote memory, concentration, attention, abstraction, insight, judgment, and impulsivity. (R. 710). NP assessed that Plaintiff had chronic depression and moderate to severe chronic panic/anxiety, and she prescribed medication to treat both conditions. (R. 711–12). Although Plaintiff sometimes showed improvement, her symptoms and NP Henderson's assessments were much the same on six other visits that year. (R. 301, 314, 696, 703, 830, 836). Therefore, it was not accurate for the ALJ to summarize Plaintiff's mental health symptom evaluations as normal, which compromised the ALJ's analysis as to the consistency of NP Henderson's opinion with the overall record.[1]

Further, Plaintiff argues that the ALJ did not identify "any legitimate inconsistency" between the opinion of NP Henderson and those of the other medical sources. (Dkt. No. 17, pp. 14–15). However, the ALJ cited several findings in the opinions of Drs. Alexander, Walker, and

---

[1] The ALJ's analysis also fails to recognize that mental health conditions often do not progress in a linear fashion, but rather "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019).

Hennessey that differed from NP Henderson's assessment, as pointed out by the Commissioner. For example, the ALJ noted that Dr. Alexander found no evidence that Plaintiff had a limitation for understanding, remembering, or applying simple directions and instructions, (R. 26), whereas NP Henderson found that Plaintiff was unable to meet competitive standards for accepting instructions, (R. 946). The ALJ also noted that Drs. Walker and Hennessey found that Plaintiff was able to maintain adequate attention to complete work tasks on an ongoing basis, (R. 26), whereas NP Henderson found that Plaintiff's ability to concentrate was only fair and that she was unable to meet competitive standards for completing a workday without interruption from psychologically based symptoms, (R. 946). The Commissioner also points out several other notable inconsistencies. (Dkt. No. 22, pp. 5–6). Therefore, the ALJ did not err in concluding that NP Henderson's opinion was inconsistent with the other medical opinions.

Third, Plaintiff claims that the ALJ failed to "identify any evidence inconsistent with or unsupportive of NP Henderson's assessment of absence-related limitations." (Dkt. No. 17, p. 16). Relatedly, Plaintiff contends that the ALJ did not apply the supportability factor regarding NP Henderson's opinion. (*Id.*, pp. 17–18). As discussed above, when analyzing a medical opinion, an ALJ is required to "explain how [he] considered the supportability and consistency factors." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Here, the ALJ appeared to address supportability when he concluded that the NP Henderson's assessments were "not tied to clinical findings." (R. 26). However, the ALJ's analysis is once again inaccurate. NP Henderson assessed that Plaintiff would miss than four days of work per month due to her Major Depression and Panic Disorders. (R. 945). In support of this opinion, NP Henderson cited Plaintiff's signs and symptoms including: generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, emotional withdrawal or isolation, and easy distractibility.

14

(R. 945). NP Henderson also noted that Plaintiff "demonstrated anxiety and distractibility when interacting with others." (R. 946). Further, the ALJ failed to note that NP Henderson's opinion was largely consistent with *and supported by* her mental status evaluations of Plaintiff, as discussed above. For example, NP Henderson's finding that Plaintiff had moderate to severe panic/anxiety tends to support an absence-related restriction. (*See* R. 711). Accordingly, the Court concludes that the ALJ's analysis of NP Henderson's opinion is not supported by substantial evidence for this reason as well.[2]

### 2. Drs. Alexander, Walker, and Hennessey

Dr. Alexander, the consultative examiner, and Drs. Walker and Hennessey, the non-examining consultants, generally opined that Plaintiff had mild or no limitations for her mental functioning. (R. 68–69, 84, 758, 773–75). The ALJ found Dr. Alexander's opinion to be "persuasive due to the Doctor's program knowledge, the opinion being supported by the findings from the Doctor's examination of the claimant and the opinion being consistent with objective evidence in the overall longitudinal record." (R. 26). Similarly, the ALJ found that the opinions of Drs. Walker and Hennessey were also persuasive "due to the Doctors' program knowledge, the opinions being supported with explanations and consistent with objective evidence in the overall longitudinal record." (R. 26).

However, Plaintiff argues that "[t]he ALJ's citation to the 'overall longitudinal record' is insufficient to identify the evidence consistent with the opinions." (Dkt. No. 17, p. 19). In response, the Commissioner contends that "the same evidence . . . that supports the ALJ's decision to discount Ms. Henderson's opinion" also supports the ALJ's decision to find the other

---

[2] To the extent the ALJ did not consider NP Henderson's mental status evaluations as "clinical findings," it is not clear what would have sufficed. In the context of mental health conditions, where objective tests are elusive, a medical provider can often only be expected to review the patient's history based on her subjective symptoms, conduct a mental status examination, and assess the patient's ability to function.

15

medical opinions more persuasive.  (Dkt. No. 22, p. 18).  But as discussed above, the ALJ mischaracterized the "overall longitudinal record" in this case by largely omitting the abnormal mental health findings from NP Henderson's evaluations of Plaintiff.  Thus, the ALJ's analysis is flawed as to the opinions of Drs. Alexander, Walker, and Hennessey, and the Court cannot say that substantial evidence supports the ALJ's heavy reliance on these opinions.

### B. Residual Functional Capacity

Finally, Plaintiff argues that the ALJ's assessments of her social limitations and stress-related limitations are not supported by substantial evidence.  (Dkt. No. 17, pp. 20–24).  The Commissioner counters that the ALJ permissibly discounted NP Henderson's opinion and cited substantial evidence for the RFC in the "more persuasive" opinions of Drs. Alexander, Walker, and Hennessy.  (Dkt. No. 22, pp. 11–23).

As discussed above, the ALJ erred in evaluating the opinion of NP Henderson (and her longitudinal treatment records), which in turn undermined the ALJ's analysis of the opinions of Drs. Alexander, Walker, and Hennessey.  Under these circumstances, the latter opinions do not on their own amount to substantial evidence for the RFC.  Accordingly, the Court declines to address the parties' additional argument as to the RFC since remand is necessary for the ALJ to reconsider the medical opinions and Plaintiff's overall RFC.  *See Brenda E. v. Saul*, No. 20-CV-093, 2021 WL 66545, at *7, 2021 U.S. Dist. LEXIS 2640, at *19 (N.D.N.Y. Jan. 7, 2021) ("Because this matter requires remand for the ALJ to reevaluate [the doctor's] medical opinion and plaintiff's RFC, the court need not address plaintiff's remaining arguments on the merits."); *Andrew G. v. Commr. of Soc. Sec.*, No. 19-CV-942, 2020 WL 5848776, at *6–9; 2020 U.S. Dist. LEXIS 182212, at *18–27 (N.D.N.Y. Oct. 1, 2020) (remanding due to the ALJ's failure to adequately explain the supportability or consistency factors that led to her decision).

V.       CONCLUSION

For these reasons, it is

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision & Order; and it is further

**ORDERED** that the Clerk amend the caption to substitute KILOLO KIJAKAZI, Acting Commissioner of Social Security, for Defendant ANDREW M. SAUL, the former Commissioner of Social Security; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

   **IT IS SO ORDERED.**

   Date:   May 9, 2022
           Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge